# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

DAVID L. ROGERS, )
       Plaintiff, )
 
v. )
                                                                                     CV616-108
NANCY A. BERRYHILL,[1] )
Acting Commissioner of )
Social Security, )
       Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff David Rogers seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Rogers, who was 49 years old when his DIB claim was denied, alleges disability beginning January 15, 2011. Tr. 140; *see also* tr. 20 (noting his prior application for benefits was denied in an unfavorable decision on January 14, 2011); 28 (date last insured December 31, 2011). He completed high school, has vocational training in microdigital electronics, and has past work experience as a field supervisor. Tr. 43-44, 199-207. After a hearing, the ALJ issued an unfavorable decision. Tr. 1-6, 20-28. He found that Rogers' degenerative disc disease of the lumbosacral spine at L2-4, spondylolisthesis of L5 on L4, osteoarthritis of the left sacroiliac joint, and torn cartilage in the right knee (exacerbated by obesity) constituted severe impairments but did not meet or medically equal a Listing. Tr. 22-23. Based on the evidence of record, the ALJ found that he retained the RFC for light work,[3] except that he

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

> . . . should never be required to climb ladders, ropes, or scaffolds. He could individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. He could lift/carry 20 pounds occasionally (up to 1/3 of an eight-hour workday) and 10 pounds frequently (up to 2/3 of an eight-hour workday). He could individually climb ramps/stairs, stoop, kneel, crouch, and crawl for no more than 1/3 of an eight-hour workday. He required a sit/stand option with 10-15 minute limitations on him remaining on his feet or sitting without a break or change of position. He needed to avoid concentrated exposure to vibration that might exacerbate his low back or right knee conditions.

Tr. 23.

Plaintiff, he determined, was incapable of performing his past work, but had transferable skills from that work such that he could perform alternative work as a dispatcher-security guard, night guard, and mail clerk -- all light work. Tr. 26-27. Hence, Rogers was not disabled. Tr. 28. He disagrees, arguing that the ALJ failed to properly weigh the medical opinion evidence and erred in evaluating plaintiff's subjective pain testimony. Doc. 19.

### A. Plaintiff's Credibility

The ALJ discredited plaintiff's subjective testimony as to the debilitating extent of his symptoms because

> there is no evidence of any significant worsening in [his] medical condition prior to [his] date last insured[.] He alleges that he cannot bend at the waist. He stated that he has low back pain with

4

> 5-10 sho[ck]s a day with medication injections verses 15-20 [shocks every couple of] hours on b[a]d days or after shots wear off. [Meanwhile,] [a] progress note from Dr. J. Dorsey Smith dated November 3, 2011, indicated that [Rogers] denied having back pain, joint pain, and neck pain. His physical exam showed no acute distress, pleasant, non-focal neurological exam, no clubbing or edema, affect normal with good eye contact and oriented times three.
>
> [Rogers] alleges that he has medication side effects such as diarrhea and constipation, but he never mentioned it to any treating physician.

Tr. 25. The ALJ further discounted Rogers' testimony based on his activities of daily living:

> [He] alleges he can stand for 15-30 minutes, has no problems with sitting, and can walk 100 yards with a cane. He can lift and/or carry nothing off the floor. On a table he can lift 20 pounds. He makes sandwiches. He puts dishes in the dishwasher but does not unload it. He drives short distances (about 15 miles). His activities are very limited. He target shoots some as a hobby then said he gave up deer and wild life hunting (inconsistent statements). He does no yard work or raking. [Rogers] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Although [he] alleges that his activities are very limited, they are not limited to the point that one would consider them disabling.

Tr. 25.

When a claimant attempts to establish disability through his own testimony of pain and other subjective symptoms, the ALJ applies a three-part "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). It requires: "(1) evidence of an underlying medical

5

condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id*. If the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, the ALJ then evaluates the extent to which the intensity and persistence of the claimant's pain limits his ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, and any other evidence of record describing how the pain affects his daily activities and ability to work. *Id*. §§ 404.1529(c), 416.929(c).

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." *Id*. (internal citation omitted). While an ALJ's credibility determination need not "cite 'particular phrases or

formulations,'" it "cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" *Id*. at 1210-11 (quoting *Foote*, 67 F.3d at 1561).

The ALJ pointed to numerous inconsistencies in the record between plaintiff's subjective pain allegations and the record. Rogers alleged disabling back and joint pain, but a lumbar spine MRI performed on March 23, 2011, revealed only mild to moderate broad-based disc bulges at L2-3 and L3-4 and Grade 1 posterolisthesis of L5 on L4 with degenerative disc bulge, but no acute compression, edema, disc herniation, or high-grade thecal sac compression. Tr. 24; *see* tr. 340. With medication, he also denied back, joint, and neck pain to his treating physician, tr. 24-25; *see* tr. 349-50, and he went target shooting and drove 15 miles at a time, tr. 25; *see* tr. 62, indicating his testimony of disabling pain was exaggerated. Rogers counters that the ALJ should have discussed nerve conduction testing performed on December 19, 2011 -- which supported bilateral chronic radiculopathy at L5 and left chronic radiculopathy at S1 -- as evidence that his condition had indeed deteriorated since January 2011. Doc. 19 at 15-16; *see* tr. 334. But the testing results alone don't

demonstrate a worsening in condition (there's nothing to compare them to in the record), and in fact are *contradicted* by plaintiff's own report denying back, joint, and neck pain in November 2011. Tr. 25; *see* tr. 349-50.[4]

Rogers contends that, regardless of these undisputed inconsistencies, his multiple diagnoses and narcotic pain prescriptions (*i.e.*, Lortab, Soma, and a Duragesic patch) demonstrate that his pain is very real. Doc. 19 at 16-17. However, the mere diagnosis of "pain syndrome, chronic" does not prove disability. *Moore*, 405 F.3d at 1213 n. 6 ("the mere existence of these impairments does not reveal the extent to which they limit [plaintiff's] ability to work"); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality'

---

[4] Rogers also contends that this progress note should not have been so relied upon by the ALJ as evidence of his condition in November 2011 because (1) it was completed by a nurse practitioner, not Dr. Smith himself, and (2) "the entire reason for the office visit was stated as 'ongoing management of chronic pain syndrome.'" Doc. 19 at 16. But, as stated *infra*, a mere diagnosis doesn't mean much absent limitations on a claimant's ability to work. And further, "management" of a diagnosed impairment, where the patient reports improvement in or amelioration of symptoms of that impairment, doesn't exactly prove that impairment is *disabling*. Finally, the fact that a nurse practitioner noted plaintiff's pain reports doesn't negate the evidentiary value of those notes -- the fact that she would not be an "acceptable medical source" for the purpose of a residual functional capacity questionnaire, *see generally* SSR 06-03p, doesn't make her notation any less germane to the question of disability.

is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")); *Wright v. Commissioner of Social Security*, 327 F. App'x 135, 137 (11th Cir. 2009) (hypotheticals to VEs need not include diagnoses that fail to prognosticate functional limitations). Severe health problems must preclude substantial gainful activity, not simply exist. *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(iv). And while a prescription for narcotic pain medication can buttress subjective pain testimony, by itself it does not prove inability to work. *E.g.*, *Mixon v. Colvin*, 2016 WL 5477105, at *4 (S.D. Ga. Sept. 28, 2016). More importantly, however, plaintiff does not explain how the ALJ failed to adequately accommodate his creditable pain testimony by imposing significant postural, lifting, and sit/stand limitations on his RFC. Tr. at 23; *see* doc. 19.

Finally Rogers disputes the ALJ's characterization of his testimony about sitting and shooting/hunting. Doc. 19 at 14-15. The ALJ stated that plaintiff had testified about having no problems with sitting. The ALJ also highlighted as contradictory an apparent conflict between

plaintiff's testimony about shooting targets as a hobby, yet he does not hunt deer/other wildlife. Tr. at 24 & 25; *see* tr. 55 & 62. In fact, plaintiff testified that he is only able to sit for up to 25 or 30 minutes at a time, and explained that while he still goes "shooting," he had been unable to go hunting for the previous five years. *Id.*

These errors are harmless. The ALJ clearly accommodated plaintiff's sitting limitation in the RFC (which required a sit/stand option with 10-25 minute limitations before needing a change of position or break). *See* tr. 23. And, even fully crediting plaintiff's testimony that he can no longer hunt and only goes shooting as a hobby, the ALJ's reasonably noted that such a hobby is inconsistent with his testimony of "disabling" pain. Tr. 25; *see e.g., Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n. 3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision"); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decisions will stand."); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's error

harmless where correcting it would not change the decision). The ALJ did not err in concluding Rogers' statements regarding the intensity, persistence, and duration of the limitations imposed by his symptoms were less than fully credible.[5] *See both* SSR 96-7p *and* SSR 16-3p.[6]

## B. Medical Opinion Evidence

Based on the creditable evidence of record, the ALJ concluded that Rogers retained the RFC to perform light work with postural and environmental limitations. Tr. 23. Plaintiff contends that the ALJ

---

[5] Rogers also argues the ALJ failed to fully address his need to use a cane. Doc. 19 at 17-18. Even fully crediting that he requires the use of a cane to ambulate, *see* tr. 54 (testifying he had used a cane for several years to balance and take pressure off his left side), plaintiff incorrectly argues that his "need for a cane is unaddressed and unrebutted." Doc. 19 at 17-18. The ALJ *did* consider his cane testimony, and specifically asked the VE whether the use of and reliance on a cane would impact Rogers' ability to perform the three identified jobs. The VE testified that plaintiff could still work as a dispatcher while using a cane, because the job entails monitoring alarms remotely and alerting appropriate security personnel as needed -- all duties that a cane would not prevent plaintiff from performing. Tr. 72-73. Thus, the ALJ's failure to explicitly address plaintiff's cane use when determining that plaintiff could work is, at most, harmless error. *See Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005) (omission of a limitation in posing a hypothetical to the VE was harmless because it would not have altered the VE's testimony). Moreover, and as the Commissioner points out, no treating source has actually *prescribed* the use of a cane as medically necessary. Doc. 20 at 10. Plaintiff cites only his own self-reported use of and reliance upon a cane in the record, *see* doc. 19 at 17 (citing tr. 316, 380, 386, 388), *not* any medical opinion prescribing the use of a cane. The ALJ therefore was not required to include any cane limitation in his RFC assessment.

[6] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

improperly accorded "little weight" to treating physician Dr. Dorsey Smith's March 2010 opinion that plaintiff was physically precluded from working. Doc. 19 at 11-13. Plaintiff points out that the language the ALJ uses in the January 2015 decision to reject the opinion is virtually indistinguishable from the January 2011 decision rejecting Dr. Smith's opinion. Doc. 19 at 12 (quoting both decisions and highlighting both a single two-word difference and the erroneous citation to exhibits in the *2011* record). Based on the "identical . . . punctuation, capitalized words, and unique syntax" replicated in the January 2015 decision, Rogers argues that it is clear "the ALJ's 'analysis' of Dr. Smith's opinion is simply a 'cut and paste' of a previous judge's analysis. As such, it does not reflect *any* analysis by the current ALJ at all." Doc. 19 at 12.

The Commissioner doesn't dispute that the language is copied and pasted from the prior decision. Doc. 20 at 5-6. She contends instead that the prior decision got it right: Dr. Smith's March 2010 opinion was properly discredited in January 2011, and "the reasons for rejecting Dr. Smith's opinion did not change in the year following the prior ALJ's decision." *Id.* at 7.

Here, the ALJ recapitulated the Commissioner's prior rejection of

Dr. Smith's opinion that plaintiff could not lift weight; sit or walk 6 hours in an 8-hour day; finger, handle, push, pull, or reach; and would miss more than 5 days of work each month. Tr. 25-26; *see* tr. 320-22. As set forth by the ALJ:

> Dr. Smith's assessment is not well supported by the medically acceptable clinical and laboratory diagnostic techniques, or by his own treatment notes. And [plaintiff]'s relatively robust outdoorsman background refutes the good doctor -- NO ONE as debilitated as Dr. Smith has [described] the [plaintiff] then turns around and engages in hunting/fishing as a hobby. These opinions are inconsistent with other substantial medical and nonmedical evidence of Record and are therefore not entitled to controlling weight. In fact the undersigned assigns little weight to these statements.

Tr. 25-26. Insisting that language replicated from a prior opinion is proof positive that the analysis is *per se* deficient, plaintiff fails to explain how either ALJ's rejection of Dr. Smith's opinion was *erroneous*. *See* doc. 19; *e.g., compare Griffith v. Colvin*, 2015 WL 1189840 at *5 (W.D. Va. Mar. 16, 2015) (plaintiff's mere, undisputed allegation the ALJ "cut-and-pasted" sections of his decision from a prior opinion does not automatically "amount to a failure by the ALJ to take a longitudinal look at the record evidence") *and Smith v. Berryhill*, 2017 WL 1502799 at *5 (D. Or. Apr. 26, 2017) (no error where ALJ "cop[ied] significant portions of [the prior ALJ's] analysis into the new opinion" but also "added additional

discussion . . . further considered and evaluated Plaintiff's subjective symptom complaints . . . and updated the discussion of Plaintiff's treatment record."), *with Davidson v. Astrue*, 703 F. Supp. 2d 1008, 1015 (C.D. Cal. 2008) (remanding where "ALJ incorporated in his decision the prior ALJ's decision *and accompanying exhibits*" despite that those exhibits were *not* in the record before him).

As this Court has explained, a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at *3 n. 3 (S.D. Ga. Aug. 12, 2015) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n. 1 (11th Cir. 2013)). And this Court will not, on its own, hunt down any such reasons. *See, e.g. United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Rogers has waived any argument on Dr. Smith's credibility.[7]

---

[7] Even so, the Court notes that on its face the ALJ's analysis is far from deficient. A dearth of any reference to objective medical evidence, clinical findings, treating notes, or observations to support the endorsed limitations *is* a sufficient reason to discount a medical source opinion's weight. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Phillips*, 357 F.3d at 1240-41. Dr. Smith's assessment lacked such underpinnings. And unsupported opinions are not entitled to great weight, treating physician or not. *Id.* And while plaintiff may have since ceased regularly hunting and fishing, he does not dispute that he was engaging in that activity *at the time* of Dr. Smith's March 2010 opinion. Suffice it to say that hunting and fishing are inconsistent with Dr. Smith's absolute disability opinion. *See, e.g.*, *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir.

## III.  CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545

---

2009) (hunting and fishing are appropriately considered activities contradicting a medical source opinion of total disability).

(11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __15th__ day of June, 2017.

/s/ G. R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA